E. F. MACE, Respondent, v. S. T. COLE, Appellant.

(35 A.L.R. 445, 198 N. W. 816.)

**Lien — threshing lien against lessor's share maintainable by cropper.**

1. Where a person farms the land of another under a cropping contract, by the terms of which the landowner and cropper are each to pay one half of the threshing bill and to receive one half of all crops produced; and where the cropper threshes the grain with a threshing machine owned and operated by himself, he is entitled to a threshing lien (Comp. Laws 1913, §§ 6854, 6855), upon the grain belonging to the landowner for the amount of the threshing bill which the landowner is obligated to pay.

**Contracts — contracts include what is necessarily implied; threshing lien for service without fixed price maintainable.**

2. A contract includes not only what the parties say but also what is necessarily to be implied from what they say. And where a party is employed to thresh grain for another and no price is fixed for such service by the parties and no mode for the ascertainment thereof prescribed by them (and there are no facts or circumstances from which it can be inferred that the service was to be gratuitous) the law implies a promise on the part of the recipient of the service to pay the reasonable value thereof. In other words, in such circum-

---

Note.—(1) Cropper's right to thresher's lien or lien for other work on share of owner, see 35 A.L.R. 445.

(2) Terms of contract implied by law from circumstances showing intention, see 6 R. C. L. 587; 2 R. C. L. Supp. 157; 4 R. C. L. Supp. 426; 5 R. C. L. Supp. 356.

stances, the person rendering the service agrees to perform the same for, and the recipient agrees to pay therefor, the reasonable value of such service at that time and place.

Opinion filed April 9, 1924.

Agriculture, 2 C. J. § 130 p. 1020 n. 54, 55; § 131 p. 1021 n. 63. Contracts, 13 C. J. § 51 p. 558 n. 24; § 62 p. 271 n. 39.

From a judgment of the District Court of Ransom County, *Mc-Kenna, J.,* defendant appeals.

Affirmed.

*Kvello & Adams,* for appellant.

*Chas. S. Ego,* for respondent.

CHRISTIANSON, J. This is an action to recover damages for the alleged conversion of certain grain upon which plaintiff claims he had a threshing lien. The case was tried to the court without a jury, and resulted in findings and conclusions in favor of the plaintiff. Judgment was entered accordingly, and defendant has appealed.

The material facts in the case are substantially as follows:

Some time prior to 1920 the defendant, S. T. Cole, sold a certain tract of land in Ransom county in this state to one W. E. Chisman, upon the "crop payment plan." In the fall of 1920 said Chisman rented said tract of land to the plaintiff, Mace, by an oral agreement on the so called "crop share plan." By the terms of such cropping contract it was agreed that Mace should farm the premises during the farming season of 1921, and should furnish all the necessary machinery and labor required for that purpose; that Chisman should furnish the necessary seed; that Chisman and Mace should each pay one half of the threshing bill; and should each receive one half of the grain harvested and threshed upon the premises. At the close of the farming season of 1921, Chisman offered the plaintiff that he might farm the land for the farming season of 1922. Nothing was said as to the terms of the agreement for 1922. It appears, however, that the parties proceeded on the theory that the relations between the parties should be governed by the terms of the agreement of 1921. Accordingly, Chis-

man furnished the seed, and the plaintiff, Mace, furnished the machinery and labor necessary in seeding and harvesting the crops.

For a number of years prior to 1922 plaintiff was the owner, and engaged in the operation, of a threshing outfit; and in August 1922, he threshed, with such outfit, the crops on the land which he had rented from Chisman. Chisman was not present at the time of the threshing, but the defendant, Cole, was there. The grain was divided at the machine, and Cole received the portion of the grain which, under the cropping agreement, went to Chisman. While the grain was being threshed plaintiff inquired as to who should pay that part of the threshing bill which Chisman was obligated to pay. Defendant gives the following version of this conversation:

"We are pretty well through with the threshing; we had hauled the wheat off and were threshing oats. Emil and I had been talking at different times, and he spoke about his thresh bill, who was going to pay the thresh bill. Well, I said, I haven't anything to do with the thresh bill, and he said he would file a lien to protect himself if he couldn't get it, and, well, I said, Emil my share of the oats is about 125 or 150 bushels, I forget which I put it, I asked if that would protect him and give me a chance to sell what was in the elevator, and he said it would, and I said if you file a lien you can file it on what is in the granary. There was nothing said about the price or amount.

"Q. You didn't inquire how much the thresh bill would amount to?

"A. No, sir.

"Q. Or what rate he was charging?

"A. No, but I was under the impression he was charging $16 an hour."

Later plaintiff filed a threshing lien upon that portion of the grain which under the cropping agreement went to Chisman. The lien was filed under §§ 6854 and 6855, Comp. Laws 1913, which read:

"Any owner or lessee of a threshing machine who threshes grain for another therewith shall, upon filing the statement provided for in the next section, have a lien upon such grain for the value of his services in threshing the same from the date of the commencement of the threshing." (§ 6854.)

"Any person entitled to a lien under this chapter shall, within thirty days after the threshing is completed, file in the office of the register of deeds of the county in which the grain was grown a statement in writing, verified by oath, showing the amount and quantity of grain threshed, the price agreed upon for threshing the same, the name of the person for whom the threshing was done and a description of the land upon which the grain was grown. Unless the person entitled to the lien shall file such statement within the time aforesaid he shall be deemed to have waived his right thereto." (§ 6855.)

It is contended by the appellant that the plaintiff was not entitled to claim a threshing lien, and that the lien filed by him is invalid:

1. Because the plaintiff was a tenant and hence, presumptively, was the owner of the entire crop, and that when he threshed the crops he did not "thresh grain for another," within the purview of § 6854, supra, but threshed for himself, and consequently was not entitled to a threshing lien.

2. Because under § 6855, supra, a threshing lien is allowed only where "the price agreed upon for threshing" is definitely fixed; and that a threshing lien is not allowed where a price for the threshing is not expressly agreed upon by the parties.

These contentions will be considered in the order stated.

(1) We find it unnecessary to enter into any extended discussion as to the legal terminology to be applied to the relations of the plaintiff and Chisman. It is undisputed that Chisman was possessed of the land under a contract with the defendant, Cole, by the terms of which Cole was entitled to receive each year as and for the purchase price of the land one-half of all crops raised thereon. The cropping agreement between Chisman and the plaintiff was, of course, subject to the terms of such purchase contract. And, while under the terms of the cropping agreement, Chisman was entitled to receive one-half of all crops raised on the land, such one-half in fact belonged to the defendant, Cole, under the purchase contract. The rights and liabilities of the several parties are measured by the terms of their contract. Merchants' State Bank v. Sawyer Farmers' Co-op. Asso. 47 N. D. 375, 14 A.L.R. 1353, 182 N. W. 264. Under the terms of the agreement between the plaintiff and Chisman, the plaintiff became the owner of one-half, and only of one-half of the grain threshed. The grain could not very well be divid-

ed before it was threshed, and that was not the agreement between the parties. The agreement was that the plaintiff Mace was to farm the land, and do all work incident thereto, should have the grain threshed, and that Chisman should pay for the threshing of that share of the grain which belonged to him, namely, one-half of all the grain threshed. Under such agreement, the plaintiff concededly had the right to employ some one to thresh the grain, and such person would be entitled to claim a threshing lien upon all of the grain for the entire threshing bill. Dahlund v. Lorentzen, 30 N. D. 275, 152 N. W. 684. Not only did the plaintiff have the right to employ some one to thresh the grain, but it was his duty to cause the grain to be threshed. And there was nothing in the agreement between the plaintiff and Chisman, which inhibited the plaintiff from threshing the grain with a machine owned and operated by himself. Nor does the appellant make any such contention. On the contrary, appellant asserts that "plaintiff still has his rights against Chisman for one-half the thresh bill." In other words, the appellant concedes that the plaintiff might thresh the grain himself, and that Chisman would be obligated under the cropping contract to pay plaintiff the reasonable or agreed price for the services so performed; but appellant contends that the plaintiff in performing such service was not threshing grain for "another" and, hence, was not entitled to a threshing lien. This contention we think ignores the stipulations and effect of the cropping agreement. Under that agreement, all the grain threshed by the plaintiff did not belong to him. He owned only one half of such grain. The other one-half, as between the plaintiff and Chisman, belonged to Chisman, and he had the right to claim and receive it as it came out of the threshing machine. The obvious purpose of the statute creating the threshing lien is to insure a person engaged in threshing payment for the services rendered others in threshing grain for them; and, hence, when a thresher is engaged to thresh grain, he need not investigate to ascertain what liens or encumbrances there may be outstanding against the grain, for he knows that he is given security upon the grain threshed for the amount of the thresh bill, and this without regard to existing liens or encumbrances. Comp. Laws 1913, § 6856; Mitchell v. Monarch Elevator Co. 15 N. D. 495, 107 N. W. 1085, 11 Ann. Cas. 1001. There was no intention to create a lien in favor of a person who threshes his own grain, so as

to enable him to be compensated for such services even at the expense of persons holding liens or encumbrances thereon. The right to a lien arises only when the owner or 'lessee of a threshing machine "threshes grain for another." In this case the plaintiff does not claim a lien upon the grain which belonged to himself. He only claims a lien upon the grain, which under the terms of the contract between plaintiff and Chisman, belonged to Chisman. This grain, Chisman could sell or mortgage, or dispose of as he saw fit. In fact he had disposed of it before he entered into the cropping contract with the plaintiff. He had disposed of it by the contract under which he held the land. And when the grain was threshed, the defendant claimed and received the grain pursuant to such contract. But that did not defeat plaintiff's right to a threshing lien. Dahlund v. Lorentzen, supra. The plaintiff was the owner of a threshing machine, with which he threshed grain for others. With this machine he threshed his own grain, and, he also threshed grain which did not belong to him, but belonged to another. In our opinion he was entitled to claim a threshing lien upon this grain.

(2) We are, also, of the opinion that the second contention is untenable. It is admitted that the plaintiff had the right to cause the grain to be threshed by some one. It does not follow from the mere fact that the parties did not mention 'a definite price for the threshing, that a price was not agreed upon. For a contract includes not only what the parties say, but also what is necessarily to be implied from what they say. Grossman v. Schenker, 206 N. Y. 466, 469, 100 N. E. 39. What is implied in an express contract is as much a part of it as what is expressed. Bishop, Contr. 2d ed. § 241; 13 C. J. 271. See also Comp. Laws 1913, §§ 5915–5917. Thus, in sales of personal property, not infrequently the agreement in terms states merely that one party will buy or that he will sell certain goods without stating any correlative obligation on the part of the other party. Williston, Contr. p. 154, § 90. In such case, the law supplies the promise on the part of the purchaser to pay the purchase price. If the parties have by any course of dealing made it possible for a reasonable man in their position to understand their intention as to the price, it will be fixed by this understanding based on previous course of dealing as effectually as if stated in words. Williston, Sales, § 167. But where the facts and

circumstances are such that it must be said that the parties did not fix a price at all, or provide any mode for ascertainment thereof, the law implies a stipulation that the seller shall sell at, and the buyer shall pay, a reasonable price.  Williston, Sales, §§ 166–171.  So, also, it frequently happens that in contracts of service, the only express promise is to employ or to serve, in such case (except where the circumstances are such as to imply that the service is to be gratuitous), the law implies a promise on the part of the recipient of the service to pay the reasonable value thereof.  Wojahn v. National Union Bank, 144 Wis. 646, 129 N. W. 1068; 1 Williston, Contr. § 90.  And, we are wholly agreed that in this case the law implied a promise on the part of Chisman to pay whomever the plaintiff procured to thresh the grain, the reasonable value of the service so performed.  In other words, in the circumstances here, the "agreed price" was the reasonable value of such service at that time and place.  Here the evidence shows and the trial court found that the services rendered were reasonably worth the sum claimed by the plaintiff in his lien statement.

The judgment appealed from is affirmed.

BRONSON, Ch. J., and JOHNSON and NUESSLE, JJ., concur.

BIRDZELL, J., not participating, through illness.